MCBROOM EASTSIDE AMBULANCE SERVICE, APPELLANT, *v.* OHIO DEPARTMENT OF HUMAN SERVICES, APPELLEE.

(No. 88AP-224—Decided September 20, 1988.)

*Jerry Weiner & Associates* and *Jerry Weiner,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *H. LeArthur Wright,* for appellee.

BRYANT, J. Appellant, McBroom Eastside Ambulance Service, appeals from a judgment of the Franklin County Court of Common Pleas affirming an order of the Ohio Department of Human Services ("ODHS") which assessed a monetary finding against appellant in the amount of $70,283.01 pursuant to appellant's provider agreement with appellee, ODHS.

Pursuant to the findings of fact of the hearing officer, appellant is an ambulance service which has a provider agreement with ODHS. Under that agreement, appellant agreed:

"1. To keep such records as are necessary fully to disclose the extent of the service provided to individuals receiving assistance under the State Plan.

"2. To furnish the Ohio Department of Public Welfare (now known as ODHS) with such information, regarding any payments claimed by such a provider for provider services under the State Plan, as the department may from time to time request.

"* * *

"6. To follow the procedures and criteria set forth in the appropriate provider handbook(s)."

Pursuant to Section 106 of the Medicaid Handbook, appellant is required "* * * to maintain such records necessary to fully disclose the extent of services provided for a period of three years (or until an audit is completed and every exception is resolved) and to

provide said records upon request to the Ohio Department of Public Welfare (ODHS) for audit purposes."

Further, Section 107.8 of the Medicaid Handbook states, in pertinent part:

"Records necessary to fully disclose the extent of services provided must be maintained for a period of three years (or until the audit is completed and every exception resolved) and said records must be made available, upon request, to the Department for audit purposes. No payment for outstanding medical services can be made if a request for audit is refused (see Section 106.3 for fuller discussion)."

Finally, Section 112 of the Medicaid Handbook allows the Bureau of Surveillance and Utilization Review of ODHS to conduct audits and assess recoupment for any amounts paid a provider in excess of that owing pursuant to the foregoing standards.

By letter dated June 20, 1984, appellant was notified that the Ohio Department of Public Welfare (now ODHS and hereinafter so referenced) intended to review appellant's provider records for the period from January 1, 1979 through March 31, 1981, and to terminate appellant's provider agreement with ODHS based on specific violations enumerated in the letter. Appellant requested a hearing to contest the proposed adjudication order, and by agreed entry of August 1, 1984, ODHS dismissed that portion of the letter terminating appellant's services and agreed to pursue only the review of appellant's provider records.

Following the hearing, the hearing officer for ODHS prepared a report including findings of fact and conclusions of law. Therein, she concluded that appellant had failed to maintain the appropriate records as required by the provider agreement and the Medicaid Handbook; that, as a result, appellant

was unable to "validate or support claims for payment" made by invoice. Further, determining that the burden rested with appellant to fully disclose the extent of services provided, and that appellant's invoices failed to do so, the hearing officer recommended that appellant be disallowed $70,283.01 in reimbursement. On June 18, 1986, ODHS adopted the hearing officer's report, finding that appellant had been overpaid in the amount of $70,283.01. Appellant filed a notice of appeal with the Franklin County Court of Common Pleas, which affirmed the order of ODHS. Appellant has appealed to this court, setting forth four assignments of error:

"1. The provider agreement is a contract of which there was no breach by Eastside and, in the alternative, even if there was a breach, there were no proximately caused damages resulting therefrom.

"2. The adjudication order's finding that Eastside's invoices were not adequate records according to the medical assistance letter dated December 1, 1981, is a retroactive and improper application of that letter.

"3. Assuming, *arguendo,* that a breach did exist, the ODHS has waived any right to assert a claim through its due course of business and failure to notify Eastside that it would no longer accept invoices as a proper form of record keeping, and is so estopped from asserting a claim.

"4. The ODHS's attachment of Eastside's funds for services performed by Eastside, subsequent to the period in question, as payment of the erroneous claim against Eastside is in direct violation of Ohio law and is a prejudgment attachment in total violation of due process requirements."

In reviewing the judgment of the common pleas court, we must determine whether the court erred in finding that the order of ODHS was sup-

ported by reliable, substantial and probative evidence and was in accordance with law. Applying that parameter of review, we must conclude that that judgment is not properly supported and must be reversed.

Although raising four specific assignments of error, appellant essentially contends that the documents supplied by appellant to ODHS were in full compliance with its provider agreement and the pertinent federal and state laws. Accordingly, appellant urges that, having complied with all stated requirements, the hearing officer improperly assessed a monetary recoupment against appellant in the amount of $70,283.01.

Pursuant not only to appellant's provider agreement with ODHS, but also in accordance with applicable federal law[1] as well as pertinent state rules and regulations,[2] appellant was required to maintain such records as are necessary "to fully disclose the extent of services provided * * *." Although aware of that requirement, appellant maintained essentially a record of invoices submitted to ODHS for payment. Even though the invoices contained more than the usual request for payment, the hearing officer found that the invoices were insufficient to fully disclose the extent of services appellant had provided. More particularly, the hearing officer concluded that:

"* * * [A] completed invoice would not disclose the nature of the service provided other than the fact of transportation, whether the destination is the nearest hospital emergency room, nor would it disclose the names of and services provided by the driver and/or attendants. The invoice is clearly designed to be a billing device, a copy of which is kept by the provider as a record of claim submittal and not as a record of services rendered."

Despite the foregoing statement, ODHS readily concedes that were appellant to have submitted, in addition to the invoices provided during the audit, a separate document disclosing the very information contained on the invoice, appellant would have complied with its provider agreement and the pertinent statutes and regulations. In short, ODHS was not seeking additional information from the separate documentation which it claims appellant should have maintained, but only seeking to corroborate or support that information already provided by virtue of the invoice originally submitted and resulting in payment to appellant. Indeed, the hearing officer concludes that "ODHS requires providers to keep records which validate or support claims for payment which are made by invoice * * *. ODHS likens this requirements [sic] to that of the Internal Revenue Service which requires back-up documentation to the 1040 form."

While it may be ODHS's intent to validate or support with additional documentation the information contained on appellant's invoice, its own agreement and handbook, as well as the related federal and state provisions, do not require validation or support, but only disclosure. The fact that ODHS would have been satisfied with additional documentation disclosing nothing further than the original invoice leads to the inescapable conclusion that appellant had fully disclosed the necessary information to ODHS; that, instead, ODHS was not seeking full disclosure, but validation or support.

We do not suggest that ODHS is

---

[1] See Section 1396a(a)(27), Title 42, U.S. Code.

[2] See former Ohio Adm. Code 5101:3-1-06, former Ohio Adm. Code 5101:3-1-55(A)(4), and Ohio Adm. Code 5101:3-1-172(E).

precluded from seeking that end should it choose in the future to designate that as the type of documentation to be maintained by a provider. However, nothing in the provider agreement, the Medicaid Handbook, or related rules and regulations requires that this appellant maintain validation or support documentation for the time period from January 1, 1979 through March 31, 1981.

Further, although ODHS ultimately issued a letter on December 1, 1981, seeking to set forth the type of documentation which providers were required to maintain in order to comply with the provider agreement, that letter may not be applied retroactively against appellant.

In the final analysis, appellant has provided ODHS with such documentation as fully discloses the extent of services provided. We do not suggest that in every case an invoice is sufficient to meet the requirements of the provider agreement. Rather, given ODHS's admission that a separate document containing the very information disclosed in the invoice would be sufficient to satisfy the provider agreement, we can only conclude that appellant has met its burden of maintaining appropriate documentation for purposes of this case. As a result of the foregoing, we sustain appellant's first two assignments of error.

In its third assignment of error, appellant contends that ODHS waived any right to further documentation by having accepted appellant's invoices throughout the history of the provider agreement. However, appellant concedes that ODHS never accepted the invoices as sufficient documentation pursuant to an audit review, but only as a basis for regular payments under the provider agreement. Accordingly, appellant's third assignment of error is without merit and is overruled.

Appellant's fourth assignment of error is rendered moot as a result of our ruling on the first two assignments of error, and is therefore overruled.

Based on the foregoing, the judgment of the common pleas court is reversed, and this matter is remanded for entry of judgment consistent with this opinion.

*Judgment reversed and cause remanded.*

WHITESIDE, P.J., and BOWMAN, J., concur.